AO 106 (Rev. 04/10) Application for a Search Warrant                                                    EC

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

In the Matter of the Search of                   )
*(Briefly describe the property to be searched*   )
*or identify the person by name and address)*     )     Case No.   2:23-mj-188
                                                 )
Information asociated with Snapchat acount username )
"am.rich23" that is stored at the premises controlled by Snap, )
Inc., headquartered in Santa Monica, California   )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the _____Central_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2251 | Sexual Exploitation of a Minor |
| 18 U.S.C. 2252 and 2252A | Possession, Distribution, and/or Receipt of Child Pornography |
| 18 U.S.C. §2422(b) | Coercion and Enticement of a Minor |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI SA Andrew McCabe
*Printed name and title*

Sworn to before me and signed in my presence.

_____
Chelsey M. Vascura
United States Magistrate Judge
*Judge's signature*

Date:   3/20/2023

City and state: Columbus, Ohio                    Chelsey M. Vascura, U.S. Magistrate Judge
                                                   *Printed name and title*

**UNITED STATES DISTRICT COURT**
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:    ) | |
| ) | **Case No:** 2:23-mj-188 |
| **INFORMATION, INCLUDING THE CONTENT** ) | |
| **OF COMMUNICATIONS ASSOCIATED WITH** ) | |
| **THE SNAPCHAT ACCOUNT FOR USERNAME** ) | **MAGISTRATE JUDGE:** Vascura |
| **"AM.RICH23" (SUBJECT ACCOUNT),  THAT IS** ) | |
| **STORED AT THE PREMISES CONTROLLED** ) | **UNDER SEAL** |
| **BY SNAP, INC.** ) | |

### AFFIDAVIT IN SUPPORT OF  A SEARCH WARRANT

I, Andrew D. McCabe, a Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state:

## I.    EDUCATION TRAINING AND EXPERIENCE

1.    I am a Special Agent with the FBI assigned to the Cincinnati Division, and I have been a Special Agent since September 2010.  During my tenure as an FBI Special Agent, I have investigated numerous crimes including, but not limited to, bank robbery, drug trafficking, racketeering, kidnapping, violent extremism, and crimes against children.

2.    While performing my duties as a Special Agent, I have participated in various investigations involving computer-related offenses and have executed search warrants, including those involving searches and seizures of computers, digital media, software, and electronically stored information.  As part of my duties as a Special Agent, I investigate various criminal child exploitation offenses, including those in violation of 18 U.S.C. §§ 2251, 2252, and 2421 *et seq*.

3.    As a SA, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

## II.   PURPOSE OF THE AFFIDAVIT

4.   I make this affidavit in support of an application for a search warrant for information associated with certain Snapchat Screen/Username that is stored at premises owned, maintained, controlled, or operated by Controlled by Snap, Inc. ("Snapchat"), a social networking company headquartered at 2772 Donald Douglas Loop North, in Santa Monica, California. The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Snapchat to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the Screen/Username: am.rich23 (the **SUBJECT ACCOUNT**).

5.   The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers, agents, and witnesses. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every known fact to me relating to the investigation. I have set forth only the facts necessary to establish probable cause for a search warrant for the content of the **SUBJECT ACCOUNT**.  I have not omitted any facts that would negate probable cause.

6.   The **SUBJECT ACCOUNT** to be searched is more particularly described in Attachment A, for items specified in Attachment B, which items constitute instrumentalities, fruits, and evidence of violations of 18 U.S.C. §§ 2251, 2252, 2252A, and 2422 – the production, receipt, distribution, transportation, advertisement, or possession of child pornography and the coercion and enticement of a minor.  I am requesting authority to search the entire content of the **SUBJECT ACCOUNT**, wherein the items specified in Attachment B may be found, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of crime.

## III.   APPLICABLE STATUTES AND DEFINITIONS

7.   Title 18 United States Code, Section 2251(a) makes it a federal crime for any person to employ, use, persuade, induce, entice, or coerce any minor to engage in, or have a minor assist any other person to engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, if such person knows or has reason to know that either the visual depiction will be transported or transmitted via a facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, or that the visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or

2

affecting interstate or foreign commerce, or if the visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce. Subsection (e) of this provision further prohibits conspiracies or attempts to engage in such acts.

8.     Title 18 United States Code, Section 2251(d)(1)(A) makes it a federal crime for any person to make, print, publish, or cause to be made, printed or published, any notice or advertisement that seeks or offers to receive, exchange, buy, produce, display, distribute or reproduce, any visual depiction involving the use of a minor engaging in sexually explicit conduct, if such person knows or has reason to know that either the notice or advertisement will be transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, including by computer or mail; or that the notice or advertisement actually was transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, including by computer or mail.

9.     Title 18, United States Code, Section 2252, makes it a federal crime for any person to knowingly transport, receive, distribute, possess or access with intent to view any visual depiction of a minor engaging in sexually explicit conduct, if such receipt, distribution or possession utilized a means or facility of interstate commerce, or if such visual depiction has been mailed, shipped or transported in or affecting interstate or foreign commerce.  This section also prohibits reproduction for distribution of any visual depiction of a minor engaging in sexually explicit conduct, if such reproduction utilizes any means or facility of interstate or foreign commerce or is in or affecting interstate commerce.

10.     Title 18, United States Code, Section 2252A, makes it a federal crime for any person to knowingly transport, receive or distribute any child pornography using any means or facility of interstate commerce, or any child pornography that has been mailed, or any child pornography that has shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.  This section also makes it a federal crime to possess or access with intent to view any material that contains an image of child pornography that has been mailed, shipped or transported using any means or facility of interstate or foreign commerce, or in or affecting interstate commerce by any means, including by computer.

11.     Title 18, United States Code, Section 2422(b), makes it a federal crime for any person to knowingly use a means of interstate commerce to persuade, induce, entice, or coerce or attempt to persuade, induce, entice or coerce, any individual who has not attained the age of 18

3

years, to engage in any sexual activity for which any person may be charged with a crime. Production of child pornography as defined in 18 U.S.C. § 2251(a) is included in the definition of sexual activity for which any person may be charged with a crime

12.    The term "child pornography[1]" , as it is used in 18 U.S.C. § 2252A, is defined pursuant to 18 U.S.C. § Section 2256(8) as "any visual depiction, including any photograph, film, video, picture, or computer or computer generated image or picture, whether made or produced by electronic, mechanical, or other means of sexually explicit conduct, where (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually conduct.

13.    The term "sexually explicit conduct", as used in 18 U.S.C. §§ 2251 and 2252, is defined pursuant to 18 U.S.C. § 2256(2)(A) as "actual or simulated (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person." Pursuant to 18 U.S.C. § 2256(2)(B), "sexually explicit conduct" when used to define the term child pornography, also means "(i) graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited; (ii) graphic or lascivious simulated; (I) bestiality; (II) masturbation; or (III) sadistic or masochistic abuse; or (iii) graphic or simulated lascivious exhibition of the genitals or pubic area of any person."

14.    The term "minor", as used herein, is defined pursuant to Title 18, U.S.C. § 2256(1) as "any person under the age of eighteen years."

15.    The term "graphic," as used in the definition of sexually explicit conduct contained in 18 U.S.C. § 2256(2)(B), is defined pursuant to 18 U.S.C. § 2256(10) to mean "that a viewer can observe any part of the genitals or pubic area of any depicted person or animal during any part of the time that the sexually explicit conduct is being depicted.

---

1 The term child pornography is used throughout this affidavit. All references to this term in this affidavit and Attachments A and B, include both visual depictions of minors engaged in sexually explicit conduct as referenced in 18 U.S.C. § 2252 and child pornography as defined in 18 U.S.C. § 2256(8).

16.     The term "visual depiction," as used herein, is defined pursuant to Title 18 U.S.C. § 2256(5) to "include undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image."

17.     The term "computer[2]" is defined in Title 18 U.S.C. § 1030(e)(1) and 2256(6) as an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

18.     "Cellular telephone" or "cell phone" means a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving videos; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may include geographic information indicating where the cell phone was at particular times

19.     "Internet Service Providers" (ISPs), used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

20.     "Internet Protocol address" (IP address), as used herein, is a code made up of numbers separated by dots that identifies particular computer on the Internet. Every computer requires an IP address to connect to the Internet. IP addresses can be dynamic, meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

---

2 The term "computer" is used throughout this affidavit to refer not only to traditional laptop and desktop computers, but also to internet-capable devices such as cellular phones and tablets. Where the capabilities of these devices differ from that of a traditional computer, they are discussed separately and distinctly.

## IV.   BACKGROUND INFORMATION REGARDING SOCIAL MEDIA AND SNAP

21.     I have had both training and experience in the investigation of computer-related crimes. Based on my training, experience, and conversations with other officers, I know the following:

22.     The Internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities. With a computer connected to the Internet, an individual computer user can make electronic contact with millions of computers around the world. Many individual computer users and businesses obtain their access to the Internet through businesses known as Internet Service Providers ("ISPs"). ISPs provide their customers with access to the Internet using telephone or other telecommunications lines; provide Internet e-mail accounts that allow users to communicate with other Internet users by sending and receiving electronic messages through the ISPs' servers; remotely store electronic files on their customers' behalf; and may provide other services unique to each particular ISP. ISPs maintain records pertaining to the individuals or companies that have subscriber accounts with the ISP. Those records may include identifying and billing information, account access information in the form of log files, e-mail transaction information, posting information, account application information, Internet Protocol addresses and other information both in computer data format and in written record format.

23.     As is the case with most digital technology, communications by way of computer or mobile devices can be saved or stored on the computer or mobile device. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or mobile device, or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others. In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

24.     A growing phenomenon related to smartphones and other mobile computing devices is the use of mobile applications. Mobile applications, also referred to as "apps," are small, specialized programs downloaded onto mobile devices that enable users to perform a variety of functions, including engaging in online chat, reading a book, or playing a game. Examples of such "apps" include LiveMe, Kik messenger service, Snapchat, Meet24, and Instagram.

6

25.     According to the Snap Law Enforcement Guide, "Snapchat is a mobile application made by Snap Inc. ("Snap") and available through the iPhone App Store and Google Play Store. The Snapchat app provides users a way to share moments with photos, videos, and chats." Snapchat's differentiating feature from other communications applications is that a sender is able to set a variable amount of time the message is viewable by the receiver. This time can be between one and ten seconds. At the expiration of time, the message is deleted from Snapchat's servers. Similarly, the message disappears from the user's devices. If the receiver of a Snapchat message does not access the application on their device, the message remains undelivered. Snap's services are designed to store unopened snaps for 30 days. After 30 days the messages are deleted from Snap's servers.

26. Snapchat users have the following abilities:

A.    Snaps: photos or videos taken using his or her phone's camera (or the Snapchat app's camera), which may be shared directly with the user's friends, or in a Story (explained below), or Chat. Snaps can also be sent from the saved pictures/videos in the gallery of the device. Unless the sender or recipient opts to save the photo or video, the message will be deleted from their devices (after the content is sent in the case of the sender and after it is opened in the case of the recipient). Users are able to save a photo or video they've taken locally to their device or to Memories, which is Snapchat's cloud-storage service.

B.    Stories: A user can add photos or videos (Snaps) to their "Story." A Story is a collection of Snaps (*i.e.*, photos or videos) displayed in chronological order. Users can manage their privacy settings so that their Story can be viewed by all Snapchatters, their friends, or a custom audience. A user can also submit their Snaps to Snap's crowd-sourced service "Our Story," which enables their Snaps to be viewed by all Snapchatters in search and Snap Map. Snap's servers are designed to automatically delete a Snap in a user's Story 24 hours after the user posts the Snap, but the user may delete part or all of the Story earlier. Submissions to Our Story may be saved for longer periods of time.

C.    Memories: Snapchat's cloud-storage service. Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories. Content saved in Memories is backed up by Snap and may remain in Memories until deleted by the user. Users may encrypt their content in Memories

7

(called "My Eyes Only"), in which case content is not accessible to Snap and cannot be decrypted by Snap.

D.    Chat: A user can also type messages, send photos (Snaps), audio notes, and video notes to friends within the Snapchat app using the Chat feature. Snap's servers are designed to automatically delete one-to-one chats once the recipient has opened the message and both the sender and recipient have left the chat screen, depending on the user's chat settings. Within the Snapchat app itself, a user can opt to save part of the Chat by tapping on the message that they want to keep. The user can clear the message by tapping it again. This will result in it being deleted from Snap's services. Users can also delete chats that they have sent to a recipient before the recipient has opened the chat or after the recipient has saved the chat. Users can also chat in groups. Chats sent in groups are deleted after 24 hours whether they are opened or not.

E.    Location Data: If a user has device-level location services turned on and has opted into location services on Snapchat, Snap will collect location data at various points during the user's use of Snapchat, and retention periods for location data vary depending on the purpose of the collection. Users have some control over the deletion of their location data in the app settings.

27. Information that Snapchat possesses and maintains:

A.    Personal Identifying Information:  When a user creates an account, they make a unique Snapchat username. This is the name visible to other Snapchat users. A user also enters a data of birth. This is supposed to prevent anyone under the age of 13 from using Snapchat. An email address is required to register a Snapchat account. A new user also has to provide a mobile phone number. This phone number is verified during the registration process. Snapchat sends an activation code that must be entered before proceeding with the registration step. However, a user may elect to bypass entering a phone number so one may not always be present in the user's account. Snapchat also retains the account creation date.

B.    Usage Information:  While a Snapchat message may disappear, the record of who sent it and when still exists. Snapchat records and retains log files and information that is roughly analogous to the call detail records maintained by telecommunications companies. This includes the date, time, sender, and recipient of a snap. Additionally, Snapchat stores the number of messages exchanged, which

users they communicate with the most, message status including if and when the message was opened, and whether the receiver used the native screen capture function of their device to take a picture of the snap before it disappeared.

C.    Device Information: Snapchat stores device information such as the model, operating system, operating system version, mobile device phone number, and mobile network information of devices used in conjunction with the service. They also collect unique device identifiers such as the Media Access Control (MAC) address and the International Mobile Equipment Identifier (IMEI) or Mobile Equipment Identifier (MEID) of devices used to access Snapchat.

D.    Device Phonebook and Photos: If a user consents, Snapchat can access from their device's electronic phonebook or contacts list and images.

E.    Location Data: may be available for a Snapchat user who has turned on location services on their device and opted into location services in the app settings.

F.    Message Content: Because Snap's servers are designed to automatically delete most user content, and because much of a user's content is encrypted, Snap often cannot retrieve user content except in very limited circumstances. For example, Memories content may be available until deleted by a user.

28.    If a user has device-level location services turned on and has opted into location services on Snapchat, Snap will collect location data at various points during the user's use of Snapchat, and retention periods for location data vary depending on the purpose of the collection. Users have some control over the deletion of their location data in the app settings.

29.    Therefore, the computers/servers of Snapchat are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Snapchat, such as account access information, transaction information, and other account information.

V.    **INVESTIGATION AND PROBABLE CAUSE**

30.    On or about April 8, 2022, law enforcement with the Baldwin-Whitehall School District in Pittsburgh, Pennsylvania contacted the Whitehall Borough Police Department (WBPD) in relation to the dissemination of child sexual abuse material at a local middle school. More specifically, WBPD learned that a sixth-grade student at a Pittsburgh, Pennsylvania middle school had been distributing photos of another fellow sixth-grade student.

31. WBPD officers responded to the middle school and met with school administrators there. During the course of their investigation at the school, WBPD learned that Minor Victim One, an approximately eleven-year-old male, had distributed an image of Minor Victim Two, an approximately eleven-year-old male. The image that was distributed depicted Minor Victim Two's nude penis. Law enforcement further learned that the image of Minor Victim Two had been distributed to two other students at the middle school, Witness One and Witness Two.

32. Through further investigation, WBPD learned that Minor Victim One had been using the mobile application Snapchat and was in communications with a Snapchat user who utilized the display name "Ally." On or about April 6, 2022, "Ally" sent Minor Victim One the explicit image of Minor Victim Two. Minor Victim One indicated that the image of Minor Victim Two appeared to be a photograph taken from the groin area facing upwards towards Minor Victim Two's chest and face. The nude penis of Minor Victim Two was depicted in the image.

33. In a further interview with Minor Victim One, Minor Victim One stated that his Snapchat username was "nickiminaj18_31" and that the username for "Ally" was "am.rich23". In addition to the image of Minor Victim Two, "Ally" sent Minor Victim One an image which appeared to depict the breasts of a pubescent female, however, the image did not show the female's face. Minor Victim One further admitted that he did not know the identity or age of "Ally" but was aware that other fellow classmates at his Pittsburgh middle school had also communicated with "Ally."

34. Minor Victim Two was then interviewed and denied ever sending an image of himself to "Ally" on Snapchat but admitted that he does in fact communicate with "Ally". It should be noted that at the time of the interview when he was asked about the image, the mother, father, and twin sister of Minor Victim Two were present.

35. During the course of the investigation, Witness One and Witness Two were interviewed as well, during which, both admitted that they separately communicated with "Ally" on Snapchat and, while neither knew the identity of "Ally," both confirmed that "Ally" said she was from Ohio. Witness Two further elaborated that he had played a game called "25 questions" with "Ally" on Snapchat and during this conversation, "Ally" indicated she was a 15-year-old female from Ohio. Witness One and Witness Two both also confirmed that they had seen the explicit image of Minor Victim Two and that the image had been sent to them separately by Minor Victim One via Snapchat.

36.     Legal process and search warrants were then served to Snapchat as it related to the "Ally" Snapchat account with Snapchat username "am.rich23". On or about May 31, 2022, return results were received which noted that IP address 184.58.112.20 and email address arich1523@gmail.com were associated with the "am.rich23" Snapchat account.

37.     The search warrant results from Snapchat for the "am.rich23" account also revealed that the account was in communication with Minor Victim One. The "am.rich23" account had three saved images of Minor Victim One, which you affiant has review, and are described as follows:

  a. **Image One**: full face of Minor Victim One with an exposed penis
  b. **Image Two:** Minor Victim One wearing a blue shirt displaying his exposed penis. Minor Victim One's face is partially visible
  c. **Image Three**: Minor Victim One wearing a blue shirt exposing his erect penis.

38.     Additionally, the account had three saved images of another pubescent minor male, hereinafter referred to as Minor Victim Three, which appear to have been taken in the same room as the previously identified images of Minor Victim One. Your affiant has reviewed these images, and they are described as follows:

  a. **Image One:** Minor Victim Three kneeling wearing white underwear, and a purple shirt kneeling on his hands and knees exposing his anus and buttocks
  b. **Image Two:** Minor Victim Three wearing a purple shirt, grey and black camouflage patterned pants exposing his aroused, exposed penis
  c. **Image Three:** Minor Victim Three wearing grey pants, white underwear and a purple shirt holding his aroused, exposed penis

39.     In conjunction with the search warrant results received from Snapchat, law enforcement also learned that the National Center for Missing and Exploited Children (NCMEC) had received a tip from Snapchat regarding the "am.rich23" account as well. More specifically, WBPD learned that one image of suspected child pornography was uploaded by the "am.rich23" account on May 15, 2021. Your affiant viewed the image which depicted a pubescent female pulling her shirt up to expose her naked breasts. This image appears to be consistent with the image described by Minor Victim One, which had been sent to him by "Ally."

40.     Your affiant further learned that the IP address associated to the "am.rich23" account for the May 2021 NCMEC report was 184.58.112.20, which your affiant would note is the same IP address associated with the instant investigation per the legal process returns from

Snapchat. An open-source database check showed that the IP address 184.58.112.20 was resolved to Charter Communications Inc.

41.     On or about July 5, 2022, in response to legal process, Charter Communications identified the subscriber of the account associated to that IP address as Marcia Wolfe, residing at 1729 Garey Road NE, Junction City, Ohio 43748.

42.     Legal process was also served to Google, LLC for information related to the arich1523@gmail.com which was the email account registered to the "am.rich23" Snapchat account. On or about July 7, 2022, Google provided the following information:

> **Username:** Ally Richards
> **Date of Birth:** 7 June 2003
> **Google Account ID:** 10962827015
> **Recovery Email:** Claywolfe_11@hotmail.com
> **Device Used:** Apple iPhone 11
> **Account Creation Date:** March 6, 2019
> **Date Last Active:** June 5, 2022

43.     Your affiant would note that, based on my training and experience, individuals involved in criminal activity will often create fictitious email accounts in order to obscure their true identity and location. Often the recovery email address associated with fictitious accounts are valid email addresses for the user to allow the individuals to retain access to their accounts.

44.     Additional legal process was served to Microsoft as related to the recovery email noted above as Claywolfe_11@hotmail.com. On or about August 31, 2022, Microsoft provided the following responsive information:

> **Username:** Clay Wolfe
> **Account Creation Date:** June 25, 2005
> **Device Used:** iPhone 11

45.     A check with the Bureau of Motor Vehicles revealed Clay Thomas Wolfe, with a date of birth of June 5, 1995 resided at 1729 Garey Road NE, Junction City, Ohio. Additionally, BMV records showed Wolfe as the registered owner of a White, 2021 Chevrolet, Ohio license plate HMP9863, Vehicle Identification Number 1GCHTCEN3M1293067.

46.     Further open source and database checks have identified Clay Thomas Wolfe (herein after WOLFE), as an assistant woman's volleyball coach at New Lexington High School, New Lexington, Ohio.

47.     Your affiant would note that in reviewing the return from Microsoft related to the claywolfe_11@hotmail.com email address, on or about January 4, 2021, WOLFE sent an email in

which he provided his resident address as 1729 Garey Rd, NE Junction City, Ohio 43748 and his telephone number as 740-684-2777.

48.     Furthermore, as learned via the Microsoft returns, on or about July 7, 2022, an email was sent to WOLFE from Snapchat. The email stated WOLFE's Snapchat account was logged into from an iPhone XR on July 7, 2022 from IP address 184.58.112.20. Your affiant would note that this IP address is the same one Snapchat reported in the NCMEC tip from May 2021 and the same IP address associated to the current investigation as learned about through the Snapchat legal process request.

49.     On or about July 10, 2022, an email was sent to WOLFE at claywolfe_11@hotmail.com from Google LLC. In the email, Google informed the WOLFE that the password for the Google account wolfe3822@gmail.com was changed.

50.     In addition, on or about July 17, 2022, an email was sent to WOLFE at claywolfe_11@hotmail.com from Google, LLC. In the email, Google stated it had received a request to access the Google account 740-684-2777. Your affiant would note that 740-684-2777 is the telephone number WOLFE previously self-identified as using in another email recovered from the Hotmail account.

51.     On or about September 6, 2022, WBPD reached out to the FBI and your affiant for assistance related to the investigation of WOLFE.

52.     In learning that the "am.rich23" Snapchat account was still being utilized, on September 9, 2022, a preservation request was submitted to Snapchat for that account. In addition, on September 9, 2022, preservation orders were served to Google, LLC for the wolfe3822@gmail.com and Microsoft for the Claywolfe_11@hotmail.com.

53.     Legal process was also served to Apple, Inc. requesting information regarding iCloud accounts associated with telephone number (740) 684-2777. Your affiant learned of possible iCloud accounts via the aforementioned July 7, 2022 email from SnapChat which stated Wolfe's SnapChat account had been logged into from a iPhone XR.

54.     On or about October 11, 2022, Apple provided the following information regarding the iCloud Account associated with telephone number (740) 684-2777:

> **Apple ID**: claywolfe_11@hotmail.com
> **DS ID**: 1019111025
> **Account Type**: Full iCloud
> **Name**: Clay Wolfe
> **Account Creation Date**: December 25, 2012
> **Address**: 1725 Garey Rd, Junction City Ohio

13

**Telephone number:** 17406842777
**Registration IP address:** 107.8.123.3

55.     Apple, Inc. further provided information which indicated that from February 10, 2019 to present day, the following devices were associated with the iCloud Account: an iPhone XR, Serial Number G0NY3K51KXKN and an iPhone 13 mini, Serial Number X625QPT6QR. Your affiant would note that the iPhone XR was utilized to log into the Snapchat account noted above in conjunction with the exploitation that was being committed on that target Snapchat account.

56.     In addition, Apple indicated IP address 184.58.112.20 was used to access the iCloud account. Your affiant would again note that this IP address is the same one Snapchat reported in the NCMEC tip from May 2021 and the same IP address associated to the current investigation as learned about through the Snapchat legal process request.

57.     In November 2022, your affiant obtained a search warrant from the Southern District of Ohio for the iCloud account associated with claywolfe_11@hotmail.com. On or about December 7, 2022, return results were received. A review of the returns revealed over 100 images and videos of nude, age questionable and pubescent males engaged in the lascivious exhibition of their genitalia, masturbation, or sex acts with others.

58.     In January 2023, your affiant obtained a search warrant from the Southern District of Oho for the Snapchat username am.rich23. Return results from that search warrant revealed that between March 1, 2022 and January 10 2023, WOLFE engaged in online communications with over one hundred other Snapchat users. In review of these communications, WOLFE represented himself as a teenaged female named "Ally" who resided in Ohio. WOLFE sent both nude and clothed images and videos of pubescent females to almost exclusively male users and requested nude images in return. The review of the Snapchat content is still ongoing but to date, your affiant has noted that WOLFE has requested and received images of child pornography from at least 15 individuals who were under the age of 16 or indicated such to him.

59.     On February 8, 2023, a state search warrant was executed at WOLFE's residence located at 1729 Garey Rd, NE, Junction City, in Perry County, Ohio. During the search warrant execution, law enforcement seized a total of seven devices including a 1) Jahovans Thumb Drive; 2) HP Laptop serial number 2CE20419XL; 3) Samsung Galaxy Cellular Telephone bearing IME 35BS180722171; 4) Black Apple iPhone 13 mini cellular telephone bearing IME 353186432413169; 5) Black Apple iPhone 4s cellular telephone; 6) Samsung Cellular phone

14

bearing a sticker with the number "55"; 7) Black Apple iPhone; and 8) Sony PS4 serial number MB07333920. An on scene preview of the cellular phones was conducted and multiple images of what was reasonably believed to be child sexual abuse material was noted by law enforcement. In addition, WOLFE consented to the search of his iPhone 13 Mini and hundreds of images depicting nude, age questionable or pubescent males, were observed.

60.    While on scene, WOLFE indicated that he had used the Snapchat account am.rich23 to receive child pornography and admitted to obtaining child pornography from over 100 minor victims since 2018. WOLFE further admitted to distributing the images he obtained to others he met online and that he last received images of minor children on February 7, 2023, the day before the search warrant execution.

61.    WOLFE was subsequently charged with one count of Pandering Obscenity Involving a Minor in violation of Ohio Revised Code 2907.321(A)(6), a felony in the second degree, and one count of Pandering Obscenity Involving a Minor in violation of Ohio Revised Code 2907.321(A)(5), a felony in the fourth degree.

62.    Based on the information that has been gathered to date by your affiant, your affiant has reason to believe that the individual utilizing the **SUBJECT ACCOUNT**, Clay Wolfe, has produced, sought out, distributed and received child pornography utilizing his Snapchat profile am.rich23. Therefore, it is likely that the **SUBJECT ACCOUNT** contains items which constitute instrumentalities, fruits, and evidence of violations of 18 U.S.C. §§ 2251, 2252, 2252A, and 2422 – the production, receipt, distribution, transportation, advertisement, or possession of child pornography and the coercion and enticement of a minor

## VI.    COMMON CHARACTERISTICS OF INDIVIDUALS WITH A SEXUAL INTEREST IN CHILDREN

63.    Based on my own knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals who have a sexual interest in children and who produce, distribute, and receive child pornography:

a.    Those who have a sexual interest in children and who produce, distribute, and receive child pornography may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual

activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b. Those who have a sexual interest in children and who produce, distribute, and receive child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, video tapes, books, slides and/or drawings or other visual media. Child pornography collectors oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. Those who have a sexual interest in children and who produce, distribute, and receive child pornography often times possess and maintain any "hard copies" of child pornographic material that may exist, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. These individuals typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and video tapes for many years. More recently, however, it has become more common for people who have a sexual interest in children to download, view, then delete child pornography on a cyclical and repetitive basis, and to regularly delete any communications about the sexual abuse of children rather than storing such evidence on their computers or digital devices. Traces of such activity can often be found on such people's computers or digital devices, for months or even years after any downloaded files have been deleted.

d. Likewise, those who have a sexual interest in children and who produce, distribute, and receive child pornography often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the collector to view the collection, which is valued highly.

e. Those who have a sexual interest in children and who produce, distribute, and receive child pornography also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit

16

material; and sometimes maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f.  Those who have a sexual interest in children and who produce, distribute, and receive child pornography rarely are able to abstain from engaging in sexual exploitation of children or child pornography activities for any prolonged time period.  This behavior has been documented by law enforcement officers involved in the investigation of child pornography offenders throughout the world.

64.  Based upon the conduct of individuals who have a sexual interest in children and who produce, distribute, and receive child pornography set forth in the above paragraphs, namely, that they tend to maintain their collections at a secure, private location for long periods of time, that they rarely are able to abstain from child pornography activities for a prolonged period of time, and that forensic evidence of the downloading, saving, and storage of such evidence may remain on the computers or digital media for months or even years even after such images and videos have been deleted from the computers or digital media, there is probable cause to believe that evidence of the offenses of production, distribution and possession of child pornography is currently located in the **SUBJECT ACCOUNT.**

## VII.  **INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

65.  I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(l)(A) and 2703(c)(1)(A), by using the warrant to require Snap Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment

## VIII.  **CONCLUSION**

66.  Based on the forgoing factual information, your affiant submits there is probable cause to believe that violations of 18 U.S.C. §§ 2251, 2252, 2252A and 2422(b), – the sexual exploitation of a minor, advertising/solicitation for/or, and distribution/receipt/possession of visual depictions of minors engaged in sexually explicit conduct (hereinafter "child pornography"), and the coercion or enticement of a minor(s) is located in the content of the

17

**SUBJECT ACCOUNT**.  Your affiant respectfully requests that the Court issue a search warrant authorizing the search of the **SUBJECT ACCOUNT** described in Attachment A, and the seizure of the items described in Attachment B.  Your affiant respectfully requests that the Court issue a search warrant authorizing the search of the **SUBJECT ACCOUNT** described in Attachment A, and the seizure of the items described in Attachment B.

      67.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  Furthermore, because the warrant will be served on Snap, Inc., who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully Submitted,

Andrew D. McCabe
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 20th day of March, 2023.

The Honorable Chelsey M. Vascura
United States Magistrate Judge
United States District Court
Southern District of Ohio

18

**ATTACHMENT A**
**ITEMS TO BE SEARCHED**

This warrant applies to information associated with the Snapchat Username: am.rich23, which is

the subject of preservation requests sent to Snap, Inc., on September 9, 2022 that is stored at

premises owned, maintained, controlled, or operated by Snap Inc., a company headquartered at

2772 Donald Douglas Loop, North Santa Monica, CA 90405.

**ATTACHMENT B**
**LIST OF ITEMS TO BE SEIZED**

I. **Information to be disclosed by Snap Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Snap Inc. ("Snapchat"), including any text, image or video messages, records, files, logs, or information that have been deleted but are still available to Snapchat, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Snapchat is required to disclose the following information to the government for each user name listed in Attachment A, from January 1, 2018 to February 7, 2023.

    (a) All Basic subscriber information may including:

        a. Snapchat username
        b. Email address
        c. Phone number
        d. Display name
        e. Snapchat account creation date and IP address
        f. Timestamp and IP address of account logins and logouts

    (b) All photos or videos taken using Snapchat's app's camera, and/or shared with the user's friends, or in a Story or Chat, including metadata associated with such images or videos.

    (c) All Stories sent from the account identified in Attachment A to any other Snapchatters, the user's friends, or the user's custom audience.

    (d) All text and multimedia messages stored and presently contained in, or on behalf of the account or identifier;

    (e) All Snaps viewed by all Snapchatters in Search and Snap Map.

    (f) All Memories stored in Snapchat's cloud-storage service, to include all sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories.

    (g) All user typed messages, Snaps, audio notes, and video notes to friends within the Snapchat app using the Chat feature.

    (h) All opened and Unopened one-to-one Chats in to include Chats sent in groups.

    (i) All User saved messages.

    (j) All Device-level location services maintained by Snapchat.

(k) All activity logs for the account and all other documents showing the user's posts and other Snapchat activities;

(l) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(m) All "check ins" and other location information;

(n) All IP logs, including all records of the IP addresses that logged into the account;

(o) All past and present lists of friends created by the account;

(p) All records of Snapchat searches performed by the account;

(q) The types of service utilized by the user;

(r) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(s) All privacy settings and other account settings, including privacy settings for individual Snapchat posts and activities, and all records showing which Snapchat users have been blocked by the account;

(t) All records pertaining to communications between Snapchat and any person regarding the user or the user's Snapchat account, including contacts with support services and records of actions taken.

## II. Information to be seized by the government

The following materials which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of 18 U.S.C. §§ 2251, 2252, 2252A and 2422(b), – the sexual exploitation of a minor, advertising/solicitation for/or, and distribution/receipt/possession of visual depictions of minors engaged in sexually explicit conduct (hereinafter "child pornography"), and the coercion or enticement of a minor(s)

(a) Evidence indicating how and when the Snapchat account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Snapchat account owner;

(b) Evidence indicating the Snapchat account owner's state of mind as it relates to the crime under investigation; pertaining to the production, possession, receipt, coercion, enticement or distribution of child pornography and child erotica.

(c) Evidence of communications related to the production, possession, receipt, or distribution of child pornography and/or, the coercion or enticement of a minor to engage in illegal sexual activity.

(d) Evidence the user possessed, exchanged or requested visual depictions of minors, from other adults or minors themselves, whether clothed or not, for comparison to any child pornography or child erotica found during the execution of this search warrant or obtained during the course of this investigation.

(e) Passwords and encryption keys, and other access information that may be necessary to access the accounts or identifiers listed on Attachment A and other associated accounts.

AO 93 (Rev. 11/13) Search and Seizure Warrant

EC

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

In the Matter of the Search of ) 
*(Briefly describe the property to be searched* ) 
*or identify the person by name and address)* ) Case No.   2:23-mj-188
Information asociated with Snapchat acount username ) 
"am.rich23" that is stored at the premises controlled by Snap, ) 
Inc., headquartered in Santa Monica, California ) 

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Central _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

**YOU ARE COMMANDED** to execute this warrant on or before _____4/3/2023_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to __any US Magistrate Judge or Clerk's Office__.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:     __3/20/2023 2:58pm__

City and state:     __Columbus, Ohio__

Chelsey M. Vascura
Chelsey M. Vascura, US Magistrate Judge
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

## Certification

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

                                                   _____
                                                            *Executing officer's signature*

                                                 _____
                                                              *Printed name and title*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:     ) | |
|                                ) | **Case No:**   2:23-mj-188 |
| INFORMATION, INCLUDING THE CONTENT   ) | |
| OF COMMUNICATIONS ASSOCIATED WITH   ) | |
| THE SNAPCHAT ACCOUNT FOR USERNAME   ) | **MAGISTRATE JUDGE:** |
| "AM.RICH23" (SUBJECT ACCOUNT), THAT IS   ) | |
| STORED AT THE PREMISES CONTROLLED   ) | **UNDER SEAL** |
| BY SNAP, INC.                            ) | |

## MOTION TO SEAL

Now comes the United States of America, by and through undersigned counsel, and respectfully requests, pursuant to Federal Rule of Criminal Procedure 41(f)(3) and 18 U.S.C. § 3103a(b)(3), that the Search and Seizure Warrant, Application, and related documents in the above-captioned case be sealed until July 31, 2023, or upon a motion by the United States and additional order by the Court to unseal. Undersigned counsel represents that this case involves an investigation into the production, receipt, and possession of child pornography. The target in this investigation was producing, requesting, and receiving nude photographs of the minor victims. The investigation of the specific target and his digital media device (that is the subject of the search warrant) is ongoing and may lead to the identification of additional criminal activities, victims or co-conspirators. The target in unaware of the federal investigation and what information law enforcement agents are looking into as it relates to his exploitation activities, and disclosure of the files related to the search warrant in the above-captioned case would compromise these investigations by allowing the target to destroy additional evidence or flee.

WHEREFORE, the government respectfully requests that the Search and Seizure Warrant, Affidavit, and related documents in the above-captioned case be sealed until July 31,

2023, or upon a motion by the United States and additional order by the Court to unseal. The

government further requests that this Motion, and any resulting Order be filed under seal.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

/s/ *Emily Czerniejewski*

EMILY CZERNIEJEWSKI (IL 6308829)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Office: (614) 406-3572
Fax: (614) 469-5653
E-mail: emily.czerniejewski@usdoj.gov

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:     ) | |
|      ) | Case No: |
| INFORMATION, INCLUDING THE CONTENT     ) | 2 |
| OF COMMUNICATIONS ASSOCIATED WITH     ) | : |
| THE SNAPCHAT ACCOUNT FOR USERNAME     ) | MAGISTRATE JUDGE: |
| "AM.RICH23" (SUBJECT ACCOUNT),  THAT IS     ) | 3 |
| STORED AT THE PREMISES CONTROLLED     ) | UNDER SEAL |
| BY SNAP, INC.     ) | m |
|               ORDER | j |

The Government having moved the Court to seal certain documents and the Court being

duly advised in the premises;

IT IS HEREBY ORDERED that the Motion to Seal, this Order, the Application for a

Search Warrant and corresponding attachments, the Affidavit in support of the Application, and

the Search and Seizure Warrant Return(s) in the above captioned matter remain sealed and be

maintained in a safe place and not be opened unless by further Order of this Court.

3/20/2023
Date

Honorable CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE